DURWARD L. HINCKLEY'S CASE.

Aroostook.     Opinion, March 4, 1940.

*Berman & Berman* (Lewiston, Maine), for petitioner.
*Robinson & Richardson*, for respondent.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

THAXTER, J.   The petitioner, Durward L. Hinckley, who claims that he was an employee of the Bridge Construction Corporation, seeks compensation for an industrial accident. After a hearing the Commission found that the accident did not arise out of and in the course of the employment and ruled that the petition should be dismissed. A confirmatory decree was entered and the petitioner appealed.

The petitioner had been in the employ of the company as a fireman on a steam shovel just prior to the week commencing June 4, 1939. The job was completed and he had gone to his home. The shovel was left at Waterville. On Sunday, June 4, Rossi, the superintendent of the company, called Sydney Knott at Phillips who had operated the shovel, told him that the apparatus had to be moved for a job at Van Buren, and asked him to go with the shovel to Van Buren and to operate it there. Knott asked if the petitioner could have the job of firing, and Rossi assented to such employment. The shovel was to be transported to Van Buren on a truck. Knott and Hinckley drove in Knott's automobile to Waterville. On Monday morning Hinckley fired the boiler, and Knott drove the shovel under its own power and placed it on the truck. Hinckley rode on the truck keeping up the fire under the boiler for a time after they had started. Knott drove in his car to Augusta apparently to get a license and joined the truck later on the route. Thereafter Hinckley rode with him. The next day at Haynesville they came to a low overhead bridge. The duffel pipe on top of the boiler would not clear this, and Knott told the petitioner that they would have to remove

the pipe. The petitioner got up on the truck, Knott passed him a wrench, and while the petitioner was attempting to unscrew the pipe, he fell and suffered a broken back for which he now claims compensation.

It is not altogether clear on just what ground the commissioner bases his finding that the accident did not arise out of and in the course of the employment.

Apparently he found that Hinckley was not in the employ of the Bridge Construction Corporation, because his duties and compensation were not to start until the work at Van Buren commenced. In making this ruling the commissioner seems to have overlooked the fact that Hinckley's duties commenced at Waterville when he fired the boiler; and counsel for the insurance carrier concedes that he was in the employ of the company at least up to the time that the shovel was loaded on the truck. No other conclusion is possible because after the accident the petitioner was offered his pay for such work. If any issue on employment was presented to the commissioner, it was rather whether the employment ceased when the shovel was loaded and not when it was to commence. In determining this question it was important for the commissioner to consider all of the events of Monday — that Knott was absent for a part of the journey, that the petitioner rode on the truck with the apparent understanding that it might be necessary to get up steam in the boiler en route, if it were necessary to remove the shovel from the truck to get under a bridge or other obstruction. These important factors bearing on the petitioner's status were apparently not considered by the commissioner because of his failure to realize that the employment actually started in Waterville on the morning of June 6.

Evidence seems to have been admitted to show that it was not the custom for the defendant employer to send a fireman with the shovel. Such evidence apparently influenced the decision. The record, however, does not disclose evidence of a well-established, general custom of which both parties had actual knowledge or of which their knowledge might be presumed. The evidence received was clearly inadmissible and the question was not what had been done in other cases by this employer but what was the agreement here.

The commissioner also found that the accident did not arise out of the employment because Hinckley in unscrewing the pipe was doing

something outside of his duties as a fireman. At first glance this seems like a narrow limitation on the scope of this man's duties in an operation of this particular kind. But it is unnecessary at this time to decide this question. Having determined that the accident did not happen in the course of the employment, it was inevitable that the commissioner should find that it did not arise out of the employment. *Fournier's Case*, 120 Me., 236, 113 A., 270; *Wheeler's Case*, 131 Me., 91, 159 A., 331. If the decision on the first question should be the other way, it may well be that a more discriminating analysis of the evidence touching the second may change the result.

The ruling in this case seems to have been based in part on inadmissible testimony, in part on a misapprehension of an admitted fact. Under such circumstances an error of law was committed which this Court is required to correct. *Gauthier's Case*, 120 Me., 73, 113 A., 28. See *Mailman's Case*, 118 Me., 172, 176, 106 A., 606.

*Appeal sustained.*

*Decree reversed.*

*Case to be recommitted for further proceedings.*