**Nellie STARBIRD**

v.

**LIVERMORE SHOE COMPANY and Lumbermens Mutual Casualty Company.**

Supreme Judicial Court of Maine.

March 12, 1968.

On September 22, 1965 Mrs. Starbird was seated at a metal bench using a power operated sewing machine. Underneath the bench was a switch used to turn the sewing machine on and off. The petitioner in switching the machine off received an electrical shock resulting in injuries to the wrist and left arm. She received total compensation, which ended on October 17, 1965.

Mrs. Starbird returned to work on October 11, 1965 upon advice of her physician. She worked for four days and claims because of pain and discomfort she was unable to continue her work. She then again went back to work on October 18, 1965 and continued until November 1, 1965 when she again left her employment, saying that she was unable to work because of pain. She never returned to her employment thereafter. The petitioner filed for further total compensation by petition dated January 17, 1966, after the award of total compensation was ended on October 17, 1965. After a hearing on the petition for further compensation the Industrial Accident Commission dismissed the petition.

The issue presented is whether there was competent evidence to support the Commission's finding of fact.

"We do not review the evidence with a purpose to discover whether the Commission erred in its finding of facts. It is the trier of facts and its holdings on questions of fact, when there is any evidence in support of the same, cannot be disturbed by us. We will not pass upon the sufficiency of the evidence, but it must be competent and have probative force." Albert's Case, 142 Me. 33, 37, 45 A.2d 660, 661.

See Robitaille's Case, 140 Me. 121, 34 A.2d 473; Fisher's Case, 140 Me. 156, 34 A.2d 621; Gooldrup v. Scott Paper Co. et al., 154 Me. 1, 140 A.2d 765.

The burden of proof is on the petitioner to establish her contention by a fair preponderance of the evidence. *Robi-*

John G. Marshall, Lewiston, for appellant.

Clement F. Richardson, Portland, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

TAPLEY, Justice.

On appeal from a Pro Forma Decree of the Superior Court. The petitioner, Nellie Starbird, was employed at the Livermore Falls Shoe Company, Livermore Falls, Maine.

*taille's* Case supra. The medical testimony was supplied on the one side and the other by three doctors. In addition to the testimony of the doctors there was that of the superintendent of the mill, a nurse employed there and Mrs. Starbird. Dr. Weeks was first consulted by Mrs. Starbird on November 1, 1965 and he saw her a number of times between that first visit and April 14th of 1966. The doctor's diagnosis as of November 1, 1966 is shown by the following testimony:

"Q. Will you give us your diagnosis of your findings?

A. My diagnosis at that time was severe upper dorsal strain brought on by probably this electrical condition, this electrical shock, but it was a severe dorsal strain.

Q. What is your opinion, Doctor, as to her condition at that time with relation to her ability to work or not to work?

A. Well, I will take this lady's word for it if she couldn't work, she couldn't. And, my own opinion she was unable to work because of the pain she visibly experienced by ma- ·nipulating this area or touching this area. * * *."

The following testimony of Dr. Weeks relates to the condition of Mrs. Starbird on April 14th, the date when the doctor last saw her.

"Q. What was her condition the last time you saw her with relation to these complaints?

A. She was still having them.

Q. Was she showing any improvement?

A. Well, on the 29th, slight improvement. Been careful of arm.

  *     *     *     *     *     *

Q. With relation to your findings what would you say as to her capacity and ability to work?

A. She was still unable to work.

Q. Is there any indication, Doctor, that Mrs. Starbird is malingering, in your opinion?

A. In my opinion or anyone's opinion that knows the woman she is anything but a malingerer. I think her going back to work the first time shows that."

Dr. Eastman attended Mrs. Starbird directly after the accident on September 22, 1965 at the plant. He testified:

"I could see no outward evidence of any burns of any electrical shock—burns, electrical burns as I have seen them. The function of her arms was within normal limits. I examined the motion of her shoulder her elbows, wrists, and her fingers. Her reflexes were normal on both sides and equal, which made me feel that there was no fundamental or neurological or musculature difficulty. That was as far as I went."

Dr. Eastman saw her a number of times after September 22nd, the last time being October 4, 1965. In the opinion of Dr. Eastman, Mrs. Starbird was able to return and resume light work on October 11, 1965.

Dr. William L. Casey is a practicing orthopedic physician and surgeon. Dr. Casey examined Mrs. Starbird on November 12, 1965. The result of his examination is evidenced by his testimony:

"I could find no evidence of injury and I felt the entire picture was functional. The woman was very emotional and unstable and she apparently lacked motivation and desire to return to work, which I feel is the only treatment indicated. I felt she should be encouraged to work for her own rehabilitation and I felt that physically she could return to her usual work."

A careful review of the record demonstrates the fact that there was sufficient

competent evidence to support the factual findings of the Commissioner.

The entry is:

Appeal denied.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of the record to be paid by the employer to the employee.

DUFRESNE, J., sat at argument but did not participate in this decision.