**Norbert PELLETIER (Employee)**

**v.**

**Patrick PINETTE and/or Hartford Accident and Indemnity Company.**

Supreme Judicial Court of Maine.

Nov. 24, 1969.

Norbert Pelletier, pro se.

Mitchell & Ballou, by John W. Ballou, Bangor, for defendants.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

POMEROY, Justice.

On July 24, 1968, Norbert Pelletier, a carpenter, of St. Francis, New Brunswick, Canada, received an injury in the course of his employment as an employee of Patrick Pinette and arising out of such employment. An approved agreement between Pelletier and his employer and the Hartford Accident and Indemnity Company, the employer's insurance carrier, was reached. By its terms, Mr. Pelletier is receiving compensation for his temporary total incapacity to work.

A Petition for Review of Incapacity, filed by the employer and the carrier, was, after hearing, decided in favor of Pelletier. A Pro Forma Decree sustaining the decision of the Industrial Accident Commission was entered by the Superior Court on May 6, 1969. This appeal is from such Pro Forma Decree.

The employer and the insurance carrier ask this Court to find the Decree of the Industrial Accident Commission erroneous and to reverse it. They say

there was no evidence to support the Commission's finding.

■ The issue presented is: Was there competent evidence to support the Commission's finding of fact that Mr. Pelletier was at the time of the hearing, totally disabled due to his injury?

This Court in Starbird v. Livermore Shoe Co. et al., 239 A.2d 170 (Me.) (1968), repeated what it said in Albert v. Lockwood Co., 142 Me. 33, 45 A.2d 660 (1946).

"We do not review the evidence with a purpose to discover whether the Commission erred in its finding of facts. It is the trier of facts and its holdings on questions of fact, *when there is any evidence in support of the same,* cannot be disturbed by us. We will not pass upon the sufficiency of the evidence, but it must be competent and have probative force." (Emphasis supplied.)

At the hearing on the employer's Petition for Review of Incapacity, Dr. Woodcock of Bangor, was called as the only witness for the Petitioner. He was asked what conclusion he reached as a result of his most recent examination of Mr. Pelletier on January 14, 1969. He replied:

"I felt that he did have some work capability and suggested that he try to obtain some kind of work not physically as demanding as that of a carpenter."

To this question put to him by the employer's attorney:

"Q. Would you be in a position to express, maybe in terms of percentages, what you think his work capacity was at that time?"

He answered:

"A. It is fairly low. I would say his work—of course, there are some things that he could do 100% and some things he couldn't do. He could work at a sitting job or checking job or watchman or that sort of thing and would be fully able in that particular regard, but carpentry such as he had been doing would be out. It is a little hard to put a definite figure on it."

At that point it became the responsibility of the employee to come forward with evidence, if any there was, that he had used reasonable efforts to obtain the kind of work for which the physician had found him capable, and that he had failed by reason of his injury or because there was no such work available in the area in which he lived. Pelchat v. Portland Box Co., Inc., 155 Me. 226, 153 A.2d 615.

Mr. Pelletier did not come forward with any such evidence. His testimony (through an interpreter), touching on his ability to work was as follows:

"Q. Have you done any work since December, 1968?

A. No, I haven't.

Q. Have you tried to do any work?

A. He tried to and he just can't do any work.

Q. What did he try to do—what did you try to do?

A. He tried to do a little bit of carpentry."

The Commissioner found:

"Considering the nature of the injury and Pelletier's age and other circumstances including lack of opportunity to work, we believe, and it is our finding that Mr. Pelletier is at this time as a practical matter totally disabled due to his injury."

There was no competent evidence on which to base this finding.

The decision of the Commission cannot stand.

■ At the hearing before the Commissioner Mr. Pelletier was not represented by counsel. He is unable to speak

English.[1] The hearing was, of course, conducted in English. So far as we can tell from the record Mr. Pelletier understood none of Dr. Woodcock's testimony.

He was accompanied at the hearing by a man who did speak both French and English, but there is nothing in the record to show the friend, who served as his interpreter when he testified, ever translated Dr. Woodcock's testimony from English into French so that Mr. Pelletier could understand what was being said.

Mr. Pelletier was called to the stand by the carrier's attorney. He answered questions put to him through an interpreter. No questions were asked concerning the availability of the kind of work described by Dr. Woodcock as within Pelletier's competence.[2]

The only question asked of Mr. Pelletier by the Commissioner was:

Q. What kind of work have you done during your life, Mr. Pelletier?

A. (through the interpreter) Just carpentry. Ever since he was a little boy.

I have known him for 14 years and—
Commissioner: Well, I guess that's all.

In White v. Monmouth Canning Co., 228 A.2d 795 (Me.) (1967), this Court said:

When a claimant has failed or overlooked submitting evidence to establish the amount of compensation to which he is entitled, it then becomes the duty of the Commissioner hearing the case to call attention to such failure, to see to it that whatever evidence is available to establish such fact is presented, and then make the necessary findings of fact.

Under the circumstances, we must sustain the appeal and remand the case to the Industrial Accident Commission for further hearing to determine the extent of the employee's incapacity to work as a result of the injury.

So ordered.

---

1. Dr. Woodcock, referring to Pelletier, said: "He spoke no English but I spoke to him through his son and also relied on my own knowledge of French."

2. The employer's attorney could not serve as an adviser to the employee or conduct an examination on his behalf. No criticism of him is intended by pointing out that he did not ask questions which might have elicited answers to satisfy the employee's burden of coming forward with evidence.